## NATURAL GAS & FUEL CORPORATION v. SALLEE.

Circuit Court of Appeals, Eighth Circuit. February 21, 1929.

No. 8171.

John M. Shackleford, of El Dorado, Ark. Thomas S. Buzbee, George B. Pugh, H. T. Harrison, and A. S. Buzbee, all of Little Rock, Ark., for appellant.

Thomas C. McRae, William V. Tompkins, Duncan L. McRae, and Charles H. Tompkins, all of Prescott, Ark., for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The plaintiff below obtained a verdict and judgment against the defendant in an action founded upon a claim of negligent injury, and the defendant appeals. The only question presented is the refusal of the court to direct a verdict in favor of the defendant, and it is alleged that this refusal was erroneous because (1) the evidence was insufficient to show actionable negligence on the part of the defendant, and (2) because the undisputed evidence showed that the injury was due to a risk which the plaintiff had assumed.

The evidence showed that the defendant operated a number of oil wells in an oil field in Southern Arkansas. The plaintiff was an employee of the defendant. The accident occurred while the plaintiff was upon a timber known as a walking beam, a heavy timber used as a lever in pumping oil from a deep well. Over the well was the usual derrick. The fulcrum for the walking beam was an upright piece of timber, known as a Samson post. The walking beam was of oaken timber about 24 feet in length, and was 14 inches wide and 14 inches deep. When in pumping use, the line of suction

rods in the well constituting the plunger or piston was connected with the walking beam by a grip pipe or polish rod consisting of a T-shaped cylindrical rod 2 inches in diameter. One end of the walking beam was above the well, and in this end there was a perpendicular slot into which the vertical part of the grip pipe entered, and the horizontal part rested upon the top of the jaws of the timber on each side of the slot. The slot was 4¼ inches wide. The left jaw was 4¼ inches wide. The right jaw was 5½ inches wide. The slot extended about 18 inches back into the timber from its end. The walking beam was supported over the Samson post by means of an iron plate attached to the lower side of the beam, and lateral pivots from this were supported in journal boxes on iron plates which were attached to the sides of the Samson post. The suction rods had been drawn out of this well, to allow it to be cleaned. While this was being done, the walking beam was disconnected from the grip pipe, and was swung up at an angle of about 45 degrees. After the rods had been replaced in the well the walking beam was to be connected again with the grip pipe. To accomplish this, a rope was attached to the lower part of the grip pipe and to the front end of the beam, and then the pipe was lowered by means of a cable attached to a windlass which would have the effect of pulling the beam to a horizontal position. It was the duty of the plaintiff to climb out towards the end of the beam and to see that the vertical part of the grip pipe was lodged in the slot. The plaintiff climbed near the end of the beam, and, when the beam was lowered to the proper level, it was found that the grip pipe, instead of entering the slot, had caught on the end of the right jaw of the beam, and was held fast there, because of the great weight of rods hanging from the grip pipe, and because there was a slight groove in the end of the jaw in which the grip pipe had caught. The plaintiff employed the usual method of dislodging the pipe by inserting the handle of a Stillson wrench between the pipe and the end of the beam and prying them apart, in the endeavor to push the pipe towards the slot. He dislodged the pipe, and it flew into the slot, and as it did so it struck him on the breast and shoulder, causing the injury for which he sued.

There was evidence to show that the walking beam, when properly constructed, should not have a lateral motion of more than 2 inches, that is, that the center of the slot at the end as the beam rises and falls should not depart more than 2 inches from a perpendicular line. The plaintiff claimed that the beam on the occasion of the accident departed from the perpendicular more than this allowance, and that, when the grip pipe and the end of the jaw of the beam were pried apart, the end of the beam gave a sudden and unexpected jerk to the right for at least 5 or 6 inches, causing the sudden rush of the pipe into the slot and the resultant injury. This departure of the beam from the perpendicular line of travel was alleged to have been caused by a defect in the bearings on which one of the pivots supporting the beam rested. This bearing was an iron plate attached to the side of the Samson post by four bolts. The plate also was set in a mortise made in the Samson post. There was evidence that this plate, when kept properly attached, was held firmly against the Samson post by the bolts, and that, if this were done, more than 2 inches of lateral motion of the beam's end was prevented.

One of the plates on this Samson post was not attached firmly against the post, but was so far distant that the fingers of a man's hand could be inserted between it and the post.

The plaintiff's petition alleged that the defendant was negligent in failing to keep the support for the pivot tight and immovable on the Samson post and in failing to prevent the sidewise play of the beam. The court submitted to the jury only the allegations of negligence which related to this alleged sidewise movement of the walking beam. The appellant now contends that the sudden sidewise movement of the end of the beam could not have been over 2½ inches, and that witnesses testified that 4 or 5 inches of lateral motion was customary and showed proper construction. The claim that the beam did not move more than 2½ inches is founded upon the testimony of a witness who, during the trial, examined the end of the beam and found a groove in the right jaw, supposed to be the one where the grip pipe had first lodged, the center of which was 2 inches from the right side of the jaw, and 3 inches from the nearest side of the slot. From this assumption it is argued that there was but 2½ inches from the nearest edge of the 2-inch pipe to the nearest side of the slot, and the claim is made that the pipe must have moved into the slot when it had moved the intervening 2½ inches. But this leaves out of consideration the fact that the pipe not only had to pass the 2½ inches of obstacle because of the end of the beam

before the edge of the slot was reached, but also had to pass 2 inches farther, that is, the distance of the pipe's diameter, in order for the pipe to fully enter the slot, and it also leaves out of view the fact that the slot was 4 inches wide, and that the pipe could have passed 2 inches farther and still have entered the 4-inch slot, or a total distance of 6½ inches, and that the end of the beam could therefore suddenly have moved the distance of 6½ inches sidewise, and the pipe by this movement could have entered the slot. It is also to be observed that the plaintiff's own testimony as to the location of this groove where the pipe first lodged supports a conclusion of an even greater possible distance of side movement of the beam. While there was testimony favorable to the defendant's theory that such a movement as occurred was a proper one, there was testimony on behalf of the plaintiff that, in the proper construction of such a walking beam, there should not be over 2 inches lateral motion at that point. The verdict upon this issue is supported by sufficient evidence.

Appellant's contention that the plaintiff assumed the risk is based upon the claim that the danger was so obvious that the plaintiff should not be heard to deny his appreciation of it. In support of this claim, reference is made to the testimony of a witness who had observed the sidewise motion of the walking beam, when it was pumping, but there was no testimony that the plaintiff had seen the beam when it was pumping. The plaintiff had helped in the operation of pulling the suction rods two or three times, but there is no evidence that he ever saw or knew of a lateral movement of this beam or of other beams. The judgment will be affirmed.